IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WESLEY JOHNSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 14-1167 |
| CAROLYN W. COLVIN, | ) |
| ACTING COMMISSIONER OF | ) |
| SOCIAL SECURITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM JUDGMENT ORDER

AND NOW, this 29th day of April, 2015, upon consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Acting Commissioner of Social Security ("Acting Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act, IT IS ORDERED that the Acting Commissioner's motion for summary judgment (Document No. 13) be, and the same hereby is, granted and plaintiff's motion for summary judgment (Document No. 10) be, and the same hereby is, denied.

As the factfinder, an Administrative Law Judge ("ALJ") has an obligation to weigh all of the facts and evidence of record and may reject or discount any evidence if the ALJ explains the reasons for doing so. Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). Where the ALJ's findings of fact are supported by substantial evidence, a reviewing court is bound by those findings, even if it would have decided the factual inquiry differently. Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001). Moreover, it is well settled that disability is not determined merely by the

presence of impairments, but by the effect that those impairments have upon an individual's ability to perform substantial gainful activity. Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). These well-established principles preclude a reversal or remand of the ALJ's decision here because the record contains substantial evidence to support the ALJ's findings and conclusions.

Plaintiff filed his application for DIB on June 4, 2010, alleging disability beginning on April 22, 2010, due to nerve and cervical damage, mild sensory loss in the upper extremities, upper body numbness and pain, chronic lumbar back pain, tinnitus, chronic muscle tension, headaches, dizziness, bilateral hearing loss and multiple burns to the face, chest and abdomen. Following an administrative hearing on February 1, 2012 (the "First Hearing"), the ALJ issued a decision finding plaintiff not disabled. On August 7, 2013, the Appeals Council granted plaintiff's request for review, vacated the ALJ's decision and remanded the case to the ALJ for further proceedings.

The ALJ held a second administrative hearing on December 4, 2013 (the "Second Hearing"), at which plaintiff appeared and testified while represented by counsel. On January 22, 2014, the ALJ issued a decision finding that plaintiff is not disabled. The Appeals Council denied plaintiff's request for review on July 1, 2014, making the ALJ's decision the final decision of the Acting Commissioner. The instant action followed.

Plaintiff, who has a high school education, was 38 years old on his alleged onset date, and is classified as a younger individual under the regulations. 20 C.F.R. §404.1563(c). Plaintiff has past relevant work experience as a truck driver and inventory clerk, but he has not engaged in substantial gainful activity at any time since his alleged onset date.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the Second Hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. The ALJ first found that plaintiff suffers from the severe impairments of mild

degenerative joint disease of the lumbar spine, chronic pain secondary to a remote lightning strike, depressive disorder and a history of substance abuse; however, those impairments, alone or in combination, do not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ next found that plaintiff retains the residual functional capacity to perform sedentary work that does not involve any bilateral rapid, repetitive motion with the upper extremities. In addition, plaintiff is limited to only the incidental performance (meaning 1/6 of the work day or less) of postural adaptive positions such as stooping, crouching, crawling, kneeling, climbing and balancing. Further, plaintiff is precluded from work that involves hazards such as unprotected heights or dangerous machinery. Finally, plaintiff is restricted to simple, routine and repetitive tasks that do not involve piece work production rate pace, no interaction with the general public and only occasional interaction with co-workers (collectively, the "RFC Finding").

The ALJ concluded that plaintiff is unable to perform his past relevant work because it exceeds his residual functional capacity. However, based upon testimony by a vocational expert, the ALJ determined that plaintiff is capable of performing other work that exists in significant numbers in the national economy, such as a security guard. Accordingly, the ALJ found that plaintiff is not disabled within the meaning of the Act.

The Act defines "disability" as the inability to engage in substantial gainful activity by reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §423(d)(1)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §423(d)(2)(A).

The Social Security Regulations delineate a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must assess: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of his age, education, work experience and residual functional capacity.[1] 20 C.F.R. §404.1520(a)(4). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

In this case, plaintiff argues that the ALJ's step 5 finding is not supported by substantial evidence for the following reasons: (1) the ALJ failed to properly weigh the opinion of one of his treating physicians; and (2) the ALJ erred in evaluating the vocational expert testimony in this case. For reasons explained below, these arguments are without merit.

Plaintiff first argues that the ALJ failed to properly weigh the medical opinion issued by Dr. John Stramat, who completed a form report entitled "Medical Source Statement: Patient's Physical Capacity," on which he rated plaintiff only capable of less than sedentary work. (R. 1137-38). Plaintiff argues that the ALJ should have given Dr. Stramat's opinion controlling weight because he was one of plaintiff's treating physicians at the Veterans Administration Pittsburgh Healthcare System (the "VA"). A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of record. 20 C.F.R. §404.1527(c)(2). Under this

---

[1]Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his impairments. 20 C.F.R. §404.1545(a)(1). In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §404.1545(a)(4).

standard, the ALJ properly determined that Dr. Stramat's opinion was not entitled to controlling weight. (R. 20).

The ALJ explained that Dr. Stramat's restrictive opinion of plaintiff's physical capabilities was not entitled to controlling weight because it was inconsistent with his treatment records. (R. 20). The ALJ then cited to treatment notes from plaintiff's examination in October 2013, which showed that he had full range of motion in his right lower extremity, normal motor strength in his upper and lower extremities, no pain while sitting and no neurological symptoms. (R. 21, 1162). The notes to which the ALJ referred were not from Dr. Stramat, but rather Dr. Andrea Vogler, another VA physician. Plaintiff argues that the ALJ erred in weighing Dr. Stramat's opinion because he incorrectly identified the author of the notes upon which he relied to discount the opinion.

The ALJ's error identifying who wrote the treatment notes upon which he relied does not undermine his analysis of Dr. Stramat's opinion. As an initial matter, although treatment records from the VA identify Dr. Stramat as plaintiff's "facility appointed PCP," (R. 1219), plaintiff concedes that "[t]here are not . . . notes showing visits with Dr. Stramat - plaintiff is seen by any number of other physicians at various times." See Plaintiff's Brief in Support of Summary Judgment Motion (Document No. 10), at 17. Thus, Dr. Stramat apparently concluded that plaintiff was extremely limited in his ability to perform the physical requirements of work without ever having examined him. In evaluating and weighing Dr. Stramat's opinion, the ALJ properly relied on treatment notes from Dr. Vogler, a VA physician who actually examined plaintiff, which contradict Dr. Stramat's assessment of his physical capabilities. See 20 C.F.R. §404.1527(c)(1) (explaining that, generally, more weight is given to the opinion of an examining medical source than to a non-examining source); see also 20 C.F.R. §404.1527(c)(4) (explaining that more weight

will be given to an opinion that is consistent with the record as a whole). Accordingly, the court finds no error in the ALJ's consideration and weighing of Dr. Stramat's opinion.

Plaintiff next argues that the ALJ erred in evaluating the vocational expert testimony in this case because he did not discuss the expert's testimony from the First Hearing, which, plaintiff contends contradicted the expert's testimony from the Second Hearing. According to plaintiff, if the ALJ had applied the vocational expert's testimony from the First Hearing to the RFC Finding adopted at the Second Hearing, plaintiff would have been found disabled. Plaintiff is incorrect.

As a general matter, the ALJ properly relied on the vocational expert's testimony from the Second Hearing, and was not required to address the vocational expert's testimony from the First Hearing. See e.g., Ramirez v. Commissioner of Soc. Sec., 463 Fed. Appx. 640, 643 (9th Cir. 2011) ("despite the ALJ's lack of explanation for not relying on the testimony of the unavailable vocational expert from the first hearing, the ALJ properly relied on the vocational expert's testimony at the second hearing concerning plaintiff's past relevant work. . . ."); Villa v. Astrue, 2012 WL 2847730, at *3 (C.D. Cal. July 11, 2012) (finding that the ALJ properly relied on the testimony of the vocational expert in the second hearing, and did not err in failing to address the testimony of the vocational expert from the prior hearing).

More specifically, however, the ALJ properly relied on the vocational expert's testimony in response to the hypothetical question posed at the Second Hearing because that hypothetical incorporated all of plaintiff's limitations resulting from his impairments that were supported by the evidence of record, including all of the factors that were the basis of the RFC Finding.[2] See

---

[2] Plaintiff points out that the vocational expert at the First Hearing testified in response to a hypothetical question posed by his counsel limiting plaintiff to no contact with the general public and only superficial contact with supervisors and coworkers that no jobs exist in the national economy which he can perform; however, when the ALJ posed a similar question to the vocational expert at the Second Hearing, that expert identified jobs that plaintiff can perform. (R. 61-62, 93). According to plaintiff, the ALJ should have relied on the testimony elicited at the First Hearing to find him disabled. Plaintiff is incorrect because

Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (holding that an ALJ's hypothetical to a vocational expert must reflect all of the claimant's impairments and limitations supported by the medical evidence). Accordingly, the ALJ did not err in relying on the vocational expert testimony from the Second Hearing to conclude that plaintiff can perform work that exists in the national economy.

In conclusion, after carefully and methodically considering the evidence of record in this case, the ALJ determined that plaintiff is not disabled within the meaning of the Act. The ALJ's findings and conclusions are supported by substantial evidence and are not otherwise erroneous. Therefore, the decision of the Acting Commissioner must be affirmed.

                                                          _____
                                                          Gustave Diamond
                                                          United States District Judge

cc:     Marcia W. Margolius, Esq.
        Margolius, Margolius and Associates
        55 Public Square
        Suite 1100
        Cleveland, OH 44113-1901

        Paul Kovac
        Assistant U.S. Attorney
        700 Grant Street
        Suite 4000
        Pittsburgh, PA 15219

---

he inaccurately characterized the hypothetical question posed at the Second Hearing. Unlike plaintiff's counsel's hypothetical at the First Hearing which only generally described the level of social interaction, the ALJ's hypothetical at the Second Hearing was much more specific. That hypothetical limited plaintiff to no interaction with the general public and no more than incidental interaction with co-workers, which the ALJ defined to mean no more than 1/6 of the workday, and also involved exchanging information integral to the work process, but otherwise contact with co-workers was from a distance and did not involve any substantive communication. (R. 62). In response to the more detailed description of the required social interaction, the vocational expert at the Second Hearing identified jobs that plaintiff is capable of performing, and the ALJ properly relied on that testimony. (R. 23, 62).